Della McDOUGAL–WILSON, Plaintiff,

v.

GOODYEAR TIRE AND RUBBER COMPANY, d/b/a Just Tires, and Goodyear International Corporation, Defendants.

No. 5:04–CV–33–BO(2).

United States District Court,
E.D. North Carolina,
Western Division.

May 24, 2005.

---

Clarence Andrew McGuffin, Joyce L. Davis, Joyce L. Davis and Associates, Raleigh, NC, for Plaintiff.

Patricia W. Goodson, Sabrina Presnell Rockoff, Sarah W. Fox, Kilpatrick Stockton, LLP, Raleigh, NC, for Defendants.

### ORDER

DEVER, District Judge.

Plaintiff Della McDougal–Wilson ("plaintiff") sued her former employer, Goodyear Tire and Rubber Company, and Goodyear International Corporation ("defendants") for allegedly violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and North Carolina law. On March 26, 2004, the court entered a scheduling order.

Near the close of discovery, defendant Goodyear Tire and Rubber Company ("Goodyear") filed a motion to quash and for a protective order concerning plaintiff's proposed Rule 30(b)(6) deposition of Goodyear. Plaintiff, in turn, moved to compel discovery on various matters. Also, the plaintiff moved to strike Goodyear's motion to quash and for a protective order and its supporting memorandum of law. For the reasons stated below, the court denies Goodyear's motion to quash and grants in part, and denies in part, Goodyear's motion for a protective order. The plaintiff's motion to compel is granted in part, and denied in part. The plaintiff's motion to strike Goodyear's motion to quash and for a protective order is denied.

### PROCEDURAL HISTORY

On April 10, 2005, after unsuccessful negotiations between the parties, plaintiff served an amended deposition notice expressing her intention to depose Goodyear on a variety of topics pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. On April 13, 2005, Goodyear moved to quash the plaintiff's notice of deposition and for a protective order. On April 20, 2005, the plaintiff filed a motion to compel discovery on various issues against the defendants and moved to strike Goodyear's motion to quash and for a protective order because the supporting memorandum of law exceeded the page limits as set forth in the Local Rules. *See* Local Civil Rule 26.1(d), EDNC. On April 21, 2005, the plaintiff filed an addendum to her response to Goodyear's motion to quash and for a protective order, stating that the Rule 30(b)(6) deposition should not be limited to a one day (seven hour) time restriction. On April 22, 2005, the defendants filed a motion to expand retroactively the page limitations for its memorandum in support of their motion to quash and for a protective order. On May 12, 2005, the court disposed of the parties' dispute about page limits.

### DISCUSSION

#### I. Goodyear's Motion to Quash

Goodyear seeks to prevent the Rule 30(b)(6) deposition. *See* Goodyear Mem. at

4–5. Alternatively, Goodyear asks the court to limit the requested discovery and provide Goodyear with additional time to prepare witnesses. *See id.* at 5–17. Goodyear also asks that the deposition take place at Goodyear's principal place of business in Akron, Ohio. *See id.* at 7–8. Plaintiff responds that the timing and the proposed location of the deposition in North Carolina are appropriate. *See* Pl. Response at 1–4. Plaintiff also responds that the temporal, geographical, and topical parameters in the Rule 30(b)(6) notice are reasonable. *See id.* at 4–10. Finally, plaintiff contends that the court should not arbitrarily establish time limits on the deposition "when the length of that deposition is largely under Defendant's control." *Id.* at 10.

■ The plaintiff may depose Goodyear under Rule 30(b)(6) of the Federal Rules of Civil Procedure. Absent agreement, however, the deposition will not take place any earlier than June 23, 2005. The deposition will take place in Akron, Ohio at defendant's principal place of business. *See* 7 James Wm. Moore et al., *Moore's Federal Practice,* § 30.20[1][b][ii] (3d ed.2005) (collecting cases). Although the plaintiff correctly notes that the court has the power to permit a Rule 30(b)(6) deposition to take place at a place other than the corporation's principal place of business, the plaintiff has failed to overcome the presumption that the deposition of a corporation should take place at the corporation's principal place of business. Finally, the plaintiff will have a total of eight hours to conduct the Rule 30(b)(6) deposition. The court does not believe that the length of the deposition is under the defendant's control and further finds eight hours to be ample time to conduct an appropriate Rule 30(b)(6) deposition in this case.

## II. Goodyear's Motion For Protective Order

Turning to Goodyear's specific requests to limit the topics to be covered in the deposition, the geographic and temporal scope of the plaintiff's requested topics will be limited. Specifically, the plaintiff seeks discovery from 1995 to date in the geographical area encompassing the Goodyear Districts where Goodyear managers David Montgomery and Jeff Stewart have worked. *See* Pl. Response at 4. According to Goodyear, plaintiff was a store manager in a Goodyear retail store in Cary, North Carolina from 1996 to August 2002 when her employment was terminated. Plaintiff's immediate supervisor from 1996 until October 2001 was district manager Dave Montgomery. In October 2001, Goodyear retail stores in Wake County, including plaintiff's store, were converted to Just Tires stores and became a new district with Jeff Stewart as the district manager.

■ Discovery is not limitless. The court has the discretion to protect a party from "oppression" or "undue burden or expense." Fed.R.Civ.P. 26(c). The court limits the plaintiff's definition of "The Districts" to North Carolina stores in Dave Montgomery's district from 1999 to October 2001, and to Wake County–Durham County stores in Jeff Stewart's district from October 2001 to August 2002. All of the plaintiff's deposition topics will be geographically and temporally limited accordingly unless otherwise specified in this order.

The court now addresses Goodyear's remaining requests on a topic by topic basis.

### A. Topic 3—Goodyear's Affirmative Action Plans from 1996 Forward

■ Defendant seeks to avoid producing any affirmative action plans as privileged self-critical analysis. Plaintiff responds that the self-critical analysis privilege has been "expressly rejected" by the Supreme Court and the United States Court of Appeals for the Fourth Circuit. Pl. Response at 5 (citing *Univ. of Pa. v. Equal Employment Opportunity Comm'n,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Virmani v. Novant Health, Inc.,* 259 F.3d 284 (4th Cir.2001)). The court has reviewed these cases and concludes that they do not stand for so broad a proposition. Instead, the court embraces the more specific conclusion that even if the self-critical analysis privilege exists in this Circuit, it does not protect Goodyear's affirmative action plans from disclosure in this case. Courts in this Circuit have made clear that this particular privilege is "of recent origin and one that is

narrowly applied even in those jurisdictions where it is recognized." *In re Air Crash at Charlotte, N.C. on July 2, 1994*, 982 F.Supp. 1052, 1054 (D.S.C.1995); *cf. Warren v. Legg Mason Wood Walker, Inc.*, 896 F.Supp. 540, 542 (E.D.N.C.1995) (noting that "two recent decisions by United States District Courts in the Fourth Circuit have concluded that the Fourth Circuit does not recognize the self-critical analysis privilege"). Assuming that this privilege is valid in the Fourth Circuit, courts in the Circuit have been especially hesitant to apply this privilege in the employment discrimination context to preclude discovery of relevant documents. *See, e.g., Witten v. A.H. Smith & Co.*, 100 F.R.D. 446, 449–54 (D.Md.1984) (finding that privilege did not bar disclosure of defendant's affirmative action plans and EEO–1 reports, including self-evaluative portions), *aff'd per curiam*, 785 F.2d 306 (4th Cir.1986) (unpublished table decision); *accord Deel v. Bank of Am., N.A.*, No. CIV. A.7:04CV00150, 227 F.R.D. 456, 459–60 (W.D.Va.2005) ("Assuming that the self-critical analysis privilege is a valid privilege at federal common law, the Court finds that the defendant has not developed sufficient facts to justify its application here."). In *Etienne v. Mitre Corp.*, 146 F.R.D. 145 (E.D.Va.1993), the court explained that most courts have held that affirmative action plans are not protected by the privilege. *Etienne*, 146 F.R.D. at 148 (citing *Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663, 667 (4th Cir.1977)).

The self-critical analysis privilege does not protect the defendant's affirmative action plans from disclosure in this case. The contents of the affirmative action plans are relevant and discoverable. Nonetheless, the request for Goodyear's affirmative action plans from 1996 to date is overbroad. Accordingly, questioning on this topic will be limited to the race and gender components of the affirmative action plans and also will be limited to include only the portions of those plans en-compassing Montgomery's and Stewart's districts for the time period 1999–2004.[1]

**B. *Topic 5—Personnel Policies***

Discovery on this topic will be limited to application of personnel policies to store managers in the Districts (as limited above). The topic as articulated in the notice of the Rule 30(b)(6) deposition is oppressive and unduly burdensome. *See* Fed.R.Civ.P. 26(c).

**C. *Topic 6—Network and Hotline Reports on Concerns***

Plaintiff seeks all "reports on concerns" made to the Network or the Hotline relating to company policy violations in the Districts. The court will permit discovery of "reports on concerns" made by store managers about perceived race or sex discrimination in the Districts (as limited above). *See* Fed. R.Civ.P. 26(c).

**D. *Topic 7—Personnel Concerns Raised by Non–Caucasian Employees***

The plaintiff wants to examine Goodyear on "[p]ersonnel concerns raised by any non-caucasian employee in The District and any resultant investigation (if any) and any resultant actions, if any." The court will narrow this topic to personnel concerns raised by non-caucasian store managers in the Districts (as limited above), and any resulting investigations and actions (if any).

**E. *Topic 8—Personnel Actions and Discrimination Reports and Investigations***

Discovery on this topic will be limited to personnel actions and discrimination reports and investigations of racial or gender discrimination made by store managers in the Districts (as limited above).

**F. *Topic 9—Adverse Actions Against Store Managers as a Result of Not Making Budget, Sales, or Unit Goals***

The court will permit the plaintiff to examine Goodyear on this topic as to store managers in the Districts (as limited above).

---

1. The defendants state in their response to plaintiff's motion to compel that Goodyear's affirmative action plans for years prior to 2002 "are not maintained by Goodyear and cannot be located." Def. Response at 8. The absence of the plans for years 1999–2001 does not preclude plaintiff from questioning Goodyear about plans for those years. At the same time, the court recognizes that Goodyear simply may not know the answers to some questions. Plaintiff will have to decide how much of the eight-hour deposition to spend on this topic.

### G. Topic 10—Personnel Information for Dave Montgomery and Jeff Stewart

The plaintiff shall be permitted to examine Goodyear on this topic as it is currently formulated. Montgomery and Stewart were the decision-makers, and their personnel information during their time as Goodyear employees is discoverable.

### H. Topic 11—Benefits and Compensation Information for Della Wilson

The information sought in this topic is relevant, and plaintiff shall be permitted to examine Goodyear on this topic.

### I. Topic 12—Audits of Stores of Tim Burks

The plaintiff seeks information regarding audits of stores of Tim Burks, a store manager. Goodyear asserts that it has produced all audits of Tim Burk's stores that could be located and that both auditors—Don Everson and Robert Coale—have been deposed.

Goodyear need not provide additional information that it does not have. Nonetheless, if the plaintiff wants to use a portion of her eight-hour Rule 30(b)(6) deposition to question Goodyear on audits of Tim Burk's stores, the court will permit such questions.

### J. Topic 13—Manipulation of Profits, Bonus or Incentive Programs, or LAW Dollars

Discovery for this topic will be limited to incidents of manipulation of store profits, bonus or incentive programs, or LAW Dollars by store managers in the Districts (as limited above). The topic also will include any resulting investigation or actions taken against employees.

### K. Topic 14—Application of Retail Store Operational Policies

This topic is overbroad. This topic is hereby limited to the application of retail store operational policies concerning transfers, human resource policies, compensation, and store manager responsibilities in the Districts (as limited above).

### L. Topics 16 and 17—Store Performance and Analysis of Store Performance

The plaintiff seeks an understanding of and analysis of financials and performance of stores in the Districts (Topic 16) and store performance in each store in the District, including a plethora of financial information about the stores (Topic 17). Plaintiff claims that she needs all of this information about all of these stores to show that males were assigned to "hot" stores and to show damages (i.e., placement in a better store would have meant greater compensation).

The parties are now near the end of discovery. Extensive discovery has been conducted. For whatever reason, plaintiff has not made a targeted request about a specific store or handful of comparatory stores. The broad requests in Topic 16 and Topic 17 will not be allowed. *See* Fed.R.Civ.P. 26(c).

### M. Topic 18—Compensation Policies and Procedures Applicable to Store Managers

Discovery on this topic is limited to compensation policies and procedures applicable to store managers in the Districts (as limited above).

## III. Plaintiff's Motion to Compel

Plaintiff seeks to compel discovery on a variety of topics. Plaintiff claims that all of the information she seeks to compel has been requested in earlier interrogatories and requests for production. Pl. Mem. at 1–11. Defendants respond that much of the information requested by the plaintiff is unnecessary or irrelevant and notes that this motion to compel was filed five (5) months after the defendants objected to most of the discovery requests in question. Def. Response at 2. Some of the topics at issue in this motion are discussed above in reference to Goodyear's motion to quash and for a protective order. The court will proceed on a topic by topic basis for the sake of clarity, referring to the discussion of Goodyear's motion to quash when appropriate.

### A. *Employee Profiles of All North Carolina Employees*

■ Plaintiff requests that the defendants produce the computer generated Employee Profiles of all Goodyear employees in North Carolina from 1995 to present. Pl. Mem. at 1–2. Producing the records of over one thousand employees who were not similarly situated to the plaintiff is unduly burdensome and oppressive and is unlikely to lead to the discovery of relevant and admissible evidence. Because Goodyear already produced the profiles for all similarly situated employees, further discovery on this topic is unnecessary.

### B. *Personnel Files, including Associate Change Forms, Transfer Forms, and Exit Notification Forms*

■ Goodyear has produced available personnel files for store managers. *See* Def. Response at 4–5. Plaintiff's motion to compel the personnel files of employees who were not similarly situated to the plaintiff is denied for the same reasons as set forth in reference to Category A. *See, e.g., Cason v. Builders Firstsource–Southeast Group, Inc.,* 159 F.Supp.2d 242, 247–48 (W.D.N.C.2001). Further, Goodyear's withholding of irrelevant information and information of a personal nature (e.g., medical, family, or insurance documentation or documentation regarding safety training) is legitimate and those portions of the personnel files will not be compelled. For those individuals whose files Goodyear has agreed to produce but has been unable to locate, Goodyear shall continue its good faith efforts to locate and produce them (if located). Goodyear shall produce (if it has not done so already) the complete personnel files of Jeff Stewart and David Montgomery.

■ In regard to plaintiff's request to compel associate change forms, transfer forms, and exit notifications as part of employee personnel files, the defendants claim that these documents are not normally maintained as part of personnel files. Where such documents were in personnel files, the documents were produced. Nonetheless, because plaintiff did not specifically request these items earlier in discovery, their production will not be compelled at this late stage. Further, Goodyear's production of these documents where found in a given, responsive personnel file for certain store managers obviates the need for any further discovery on this issue.

### C. *Social Security Numbers*

■ Plaintiff seeks to compel Goodyear to produce social security numbers of each individual as to whom Goodyear has produced documents. Plaintiff states it needs the information to help locate former employees.

Goodyear legitimately redacted social security numbers from documents it produced out of concern for its employees' and former employees' privacy. Plaintiff has received last known contact information (e.g., last know address and phone number). That information is sufficient. The production of social security numbers will not be compelled.

### D. *All Letters of Commitment and Performance–Related Documentation for all North Carolina Retail Employees in North Carolina Since 1995*

■ Plaintiff seeks disciplinary documents for all employees under the supervision of Dave Montgomery and Jeff Stewart from 1995 to present. As explained in reference to Goodyear's motion to quash, the geographic and temporal scope of this request is overly broad. Further, the release of this information for employees who were not similarly situated to the plaintiff is unnecessary. Goodyear's production of documentation regarding store managers in Wake County and Durham County from 1999 to November 2004 who were disciplined by the district managers who disciplined the plaintiff is sufficient.

### E. *Affirmative Action Plans*

As explained, the self-critical analysis privilege does not shield Goodyear's affirmative action plans from discovery. The court accepts Goodyear's intention to release the affirmative action plans listed in its response to the plaintiff's motion to compel. Specifically, Goodyear will produce those portions of the

2002, 2003, and 2004 affirmative action plans relating to race and gender components encompassing Montgomery's and Stewart's districts. The defendants state that Goodyear's affirmative action plans for years prior to 2002 are not maintained and therefore cannot be located. Def. Response at 8. Goodyear shall undertake good faith efforts to locate and produce the portions of the 1999, 2000, and 2001 affirmative action plans relating to race and gender encompassing Montgomery's and Stewart's districts.

### F. *Female and Non–Caucasian Employees in Specified Positions; Nationwide*

█ Plaintiff's request to compel information regarding female and non-caucasian employees from across the nation is denied. As the defendants correctly state, discovery is limited to the employing unit unless the plaintiff provides a valid need to extend beyond that unit. *See Rodger v. Electronic Data Sys., Corp.,* 155 F.R.D. 537, 540 (E.D.N.C.1994) (rejecting plaintiff's request for company-wide discovery). At this late stage in the discovery process, plaintiff has provided no valid and specific justification to compel nationwide discovery on this issue. Her request is denied.

### G. *Discrimination Complaints*

As alluded to in the discussion of Goodyear's motion to quash, plaintiff's request for all discrimination complaints for the last ten years is overbroad and must be limited. Goodyear has produced responsive information to these requests going back to 1999 and this production is satisfactory. Plaintiff's request for more information is denied.

### H. *Units, Budgets, and Operating Statements*

Plaintiff requests units, budgets, and operating statements for Wake County and Durham County stores for 2002 and 2003 and end-of-year operating statements for all North Carolina stores from 1995 forward. To the extent that Goodyear has not produced the 2002 and 2003 financial information as to Tim Maybee and Ralph Van Aken, Goodyear shall produce it. Otherwise, Goodyear has satisfactorily responded to plaintiff's requests for compensation information as described in the interrogatories and requests for production at issue. As explained in regard to Topic L under Goodyear's motion for a protective order, the plaintiff has provided no satisfactory reason to compel production of this additional information at this late stage in discovery.

### I. *Codes for Job Titles, Locations, and Departments*

Goodyear will produce documents showing job titles and department numbers as used on the Employee Profiles. Thus, there no longer appears to be a dispute on this issue.

### IV. Plaintiff's Motion to Strike

█ Because plaintiff suffered no prejudice as a result of Goodyear's initial failure to abide by the governing page limitations for its memorandum in support of its motion to quash and for a protective order, the court denies her motion to strike. *See Hughes v. Bedsole,* 913 F.Supp. 420, 423 (E.D.N.C.1994) (denying motion to strike defendant's summary judgment motion and supporting memorandum of law where plaintiff was not prejudiced by memorandum's exceeding the page limitations found in Local Rules). On May 12, 2005, the court also granted the defendant's motion of April 22, 2005 to expand retroactively the page limitations for its previously filed memorandum of law. Accordingly, the motion to strike is denied.

### CONCLUSION

For the foregoing reasons, the court DENIES Goodyear's motion to quash and GRANTS in part, and DENIES in part, the portion of the motion requesting a protective order. Absent agreement, the Rule 30(b)(6) deposition shall not take place any earlier than June 23, 2005. The court GRANTS in part, and DENIES in part, the plaintiff's motion to compel discovery, and DENIES the plaintiff's motion to strike. The documents to be produced pursuant to this order shall be produced no later than June 13, 2005. Neither party is awarded expenses in connection with any of the motions. In accordance with this court's order filed on May

10, 2005, dispositive motions are due twenty (20) days from the completion of the Rule 30(b)(6) deposition.